**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MASIMO CORPORATION,<br><br>                 Plaintiff,<br><br>      v.<br><br>JOE E. KIANI, RODERICK WONG, NAVEEN YALAMANCHI, RTW INVESTMENTS, LP, RTW INVESTMENTS GP, LLC, RTW MASTER FUND, LTD., RTW OFFSHORE FUND ONE, LTD., RTW ONSHORE FUND ONE, LP, RTW INNOVATION MASTER FUND, LTD., RTW INNOVATION OFFSHORE FUND, LTD., RTW INNOVATION ONSHORE FUND, LP, and RTW FUND GROUP GP, LLC,<br><br>                 Defendants. | Civil Action No.: <u>24-cv-08147</u><br><br>**<u>COMPLAINT</u>** |

      Plaintiff Masimo Corporation ("Masimo" or the "Company"), by and through its undersigned counsel, brings this complaint against Defendants Joe E. Kiani, Roderick Wong, Naveen Yalamanchi, RTW Investments, LP, RTW Investments GP, LLC, RTW Master Fund, Ltd., RTW Offshore Fund One, Ltd., RTW Onshore Fund One, LP, RTW Innovation Master Fund, Ltd., RTW Innovation Offshore Fund, Ltd., RTW Innovation Onshore Fund, LP, and RTW Fund Group GP, LLC (collectively, with Dr. Wong and Dr. Yalamanchi, "RTW", and together with Mr. Kiani, "Defendants"), and alleges as follows:

## <u>NATURE OF THE ACTION</u>

      1.    This action arises out of an agreement by RTW and Joe Kiani, Masimo's founder and former-Chairman and Chief Executive Officer ("CEO"), to secretly manipulate the outcome of a corporate election in violation of the federal securities laws. Mr. Kiani and RTW understood that there was a serious risk that Mr. Kiani would lose his seat on Masimo's Board at

the 2024 annual meeting of Masimo's shareholders (the "Annual Meeting") given the longstanding and widespread criticism of his governance of the Company. In an ultimately unsuccessful attempt to preserve Mr. Kiani's seat, Mr. Kiani and RTW colluded in an "empty voting" scheme in an effort to swing the election in his favor. In doing so, Mr. Kiani and RTW formed an undisclosed group holding as much as 19% of Masimo's common stock and therefore must disgorge their short-swing profits pursuant to Section 16(b) of the Securities Exchange Act ("Section 16(b)").

2.     The scheme began soon after March 25, 2024, when one of Masimo's largest shareholders announced its intention to nominate two independent candidates for election to Masimo's Board of Directors (the "Board") to run against by Mr. Kiani and another Company nominee that Mr. Kiani had hand-picked. If the Politan nominees won the election, Mr. Kiani would be ousted from the Board. Within days after Politan's announcement, Mr. Kiani, who is a personal investor in RTW-managed funds and a close personal friend of one RTW's principals, began scheming about manipulating the vote at the upcoming Annual Meeting.

3.     At the time, RTW beneficially owned only 2.8% of Masimo's common stock and Mr. Kiani beneficially owned 9.1% of Masimo's common stock. To swing the election in Mr. Kiani's favor, Defendants agreed to a plan to increase RTW's voting power without RTW taking the economic risk associated with increasing its ownership stake. In doing so, Defendants formed a "group" under Section 13(d) of the Securities Exchange Act ("Section 13(d)") holding as much as 19% of Masimo's securities, rendering them statutory insiders subject to Section 16.

4.     The scheme worked as follows: During the thirteen days leading up to the initial record date for the Annual Meeting (the "Record Date")—the date on which eligibility to vote at the meeting was determined, RTW *more than tripled* its position from 2.8% to *9.9%* by buying shares (causing the group's total ownership to reach 19%). *At the same time*, RTW sold

short an equivalent number of shares. RTW took on no additional economic risk when it increased its voting position to 9.9% because the offsetting short position protected it from any decrease in Masimo's stock price. RTW then immediately reduced its position back to 2.8% in the days after the Record Date.

5.     As detailed below, in furtherance of the group's activities, Mr. Kiani was in constant communication with RTW via e-mails, phone calls, texts, and encrypted communications on WhatsApp. Through these communications, Mr. Kiani provided confidential information that enabled RTW to carry out the empty voting scheme.

6.     RTW followed through on the plan by voting shares representing 9.9% of Masimo's total shares in favor of Mr. Kiani on the same day that Mr. Kiani himself also voted his position. RTW revealed its position when it reached out to express its support of Mr. Kiani to Glass Lewis & Co. ("Glass Lewis"), one of the independent proxy advisory firms that issues influential voting recommendations to shareholders. In order to indicate greater shareholder support for Mr. Kiani than was actually the case, RTW brazenly held itself out as a 9.9% shareholder, rather than the 2.8% holder.

7.     Glass Lewis did not fall for RTW's deceit. Instead, Glass Lewis noted the inconsistency between RTW representing itself as a 9.9% shareholder when it had only disclosed 2.8% ownership in its public filings. Glass Lewis noted that if empty voting had happened it would be "a highly inappropriate manipulation of the shareholder franchise and a severe indictment of Masimo's credibility and corporate governance."

8.     By mid-July 2024, both Glass Lewis and the other leading proxy advisory firm, Institutional Shareholder Services ("ISS"), strongly recommended that shareholders vote in favor of Politan's nominees. As a leading research firm put it: "**The two leading proxy advisors**

are now squarely on board with Team Politan and while they don't have the last word, it's tough to imagine a scenario where Politan doesn't win two seats at [the] AGM . . . ." (Emphasis added).

9.      With defeat virtually certain, Mr. Kiani caused the Board that he controlled to move the Record Date from June 13, 2024 to August 12, 2024 and the Annual Meeting date from July 25, 2024 to September 19, 2024. By moving the Record and Annual Meeting dates, the Kiani-controlled Board effectively nullified RTW's empty voting scheme in connection with the initial Record Date. However, Defendants subsequently engaged in a **second** attempt to manipulate the shareholder vote in Mr. Kiani's favor.

10.      For the August 12, 2024 Record Date, RTW again built its position in Masimo back up to 9.9% and used the same empty voting tactic it previously had employed by selling short to nullify the increased economic exposure. By September 17, 2024, RTW had again voted 9.9% of the Company's outstanding common stock in favor of Masimo's nominees, including Mr. Kiani.

11.      Notwithstanding that RTW had artificially inflated its voting power, Politan's nominees were elected by an overwhelming majority at the Annual Meeting. Though unsuccessful, the practice of intentional empty voting presents a grave threat to shareholder democracy that should not be condoned under the federal securities laws. Indeed, Section 16(b) was enacted precisely to combat this type of abusive short-swing trading by corporate insiders (and their group members) at the expense of shareholders generally.

12.      Through this action, Masimo requests that the Court (i) declare that Mr. Kiani and RTW were members of a Section 13(d) group; and (ii) order RTW and Mr. Kiani to disgorge all short-swing profits made as a result of their group's empty voting scheme.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa.

14.     This Court has personal jurisdiction over all Defendants pursuant to Section 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and Section 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa, because Defendants regularly transact business in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district, as the subject trading took place in this district.

## THE PARTIES

16.     Plaintiff Masimo is a publicly traded Delaware corporation founded in 1989, with its headquarters and principal place of business at 52 Discovery, Irvine, California 92618.  Masimo is a medical technology company that develops, manufactures, and markets non-invasive health monitoring technologies.

17.     Defendant Joe E. Kiani is Masimo's founder.  Mr. Kiani served as Masimo's Chairman and CEO since Masimo's founding in 1989 until the certification of the vote following the Annual Meeting.  As of May 31, 2024, Mr. Kiani beneficially owned 4,880,393 shares of common stock, equivalent to 9.1%, of Masimo's outstanding common stock.

18.     Defendant Roderick Wong is the founder and principal owner of Defendant RTW Investments, LP.  Dr. Wong serves as the Managing Partner and Chief Investment Officer of Defendant RTW Investments, LP, and owns greater than 25% of the equity in Defendant RTW Investments LP.

19.     Defendant Naveen Yalamanchi is a Partner and Portfolio Manager at Defendant RTW Investments, LP.  Dr. Yalamanchi owns between 10% and 25% of the equity in Defendant RTW Investments LP.

20.     Defendant RTW Investments, LP, is a Delaware limited partnership founded in 2009 with its headquarters and principal place of business at 40 10th Avenue, Floor 7, New York, New York 10014.

21.     Defendant RTW Investments GP, LLC is a Delaware limited liability company formed in 2016 and is the general partner of Defendant RTW Investments, LP.  Its registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

22.     Defendant RTW Master Fund, Ltd. is a Cayman Islands private fund advised by Defendant RTW Investments, LP.  SEC filings indicate that its address is C/O Walkers Corporate Limited, 190 Elgin Avenue, George Town, Grand Cayman, E9 KY1-9008.

23.     Defendant RTW Offshore Fund One, Ltd. is a Cayman Islands private fund advised by Defendant RTW Investments, LP with its headquarters and principal place of business at 40 10th Avenue, Floor 7, New York, New York 10014.

24.     Defendant RTW Onshore Fund One, LP is a Delaware limited partnership founded in 2009 with its headquarters and principal place of business at 40 10th Avenue, Floor 7, New York, New York 10014.  Defendant RTW Onshore Fund One, LP is a private fund advised by Defendant RTW Investments, LP.  Its registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

25.     Defendant RTW Innovation Master Fund, Ltd. is a Cayman Islands private fund advised by Defendant RTW Investments, LP.  SEC filings indicate that its address is C/O Walkers Corporate Limited, 190 Elgin Avenue, George Town, Grand Cayman, E9 KY1-9008.

26.     Defendant RTW Innovation Offshore Fund, Ltd. is a Cayman Islands private fund advised by Defendant RTW Investments, LP with its headquarters and principal place of business at 40 10th Avenue, Floor 7, New York, New York 10014.

27.     Defendant RTW Innovation Onshore Fund, LP is a Delaware limited partnership founded in 2015 with its headquarters and principal place of business at 40 10th Avenue, Floor 7, New York, New York 10014.  Defendant RTW Innovation Onshore Fund, LP is a private fund advised by Defendant RTW Investments, LP.  Its registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

28.     Defendant RTW Fund Group GP, LLC is a Delaware limited liability company formed in 2009 and is the general partner of Defendants RTW Onshore Fund One, LP and RTW Innovation Onshore Fund, LP.  Its registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## FACTUAL BACKGROUND

**A.     Shareholders Lose Confidence in Mr. Kiani's Leadership of Masimo**

29.     From its founding in 1989 through shortly after the Annual Meeting, Mr. Kiani served as Masimo's Chairman and CEO.  Over those decades, Mr. Kiani established a track record of placing his own interests ahead of the interests of Masimo's shareholders.

30.     Shareholders lost confidence in Mr. Kiani.  In June 2023, he was rebuked by shareholders in the annual director elections when his two hand-picked nominees were soundly defeated by two candidates nominated by Politan Capital Management LP ("Politan"), one of the

Company's largest shareholders.  The Politan-nominated candidates were elected to the Board with more than 70% of the votes cast by non-insiders and with the support of seventeen of the Company's twenty largest non-insider shareholders.

**B.    Mr. Kiani's Seat on the Board is Directly Challenged in the 2024 Proxy Contest**

31.    On March 25, 2024, after Mr. Kiani had stymied the ability of the Politan-nominated directors to bring about the much-needed governance and other changes at Masimo, Politan announced that it was nominating two candidates, Darlene Solomon and Bill Jellison, for election to Masimo's Board at the Annual Meeting, which was required by law to take place no later than July 25, 2024.

32.    Dr. Solomon and Mr. Jellison would be running against Mr. Kiani and another nominee he had selected.  Having seen his two nominees lose their seats to Politan's nominees by an overwhelming margin the year prior, Mr. Kiani understood that his seat was in serious peril in the 2024 proxy contest.

**C.    RTW's Personal Relationship with Mr. Kiani**

33.    RTW worked with Mr. Kiani to help save his seat.  Mr. Kiani has a deep relationship with RTW that goes far beyond RTW's investment with Masimo.  Indeed, Mr. Kiani himself personally invests in RTW's managed funds and is featured in a testimonial on RTW's website where he describes RTW as his "trusted partner":[1]

---

[1]    https://www.rtwfunds.com/our-companies/



34.     In addition, Mr. Kiani is close personal friends with Dr. Yalamanchi, a Partner and Portfolio Manager at RTW who is responsible for RTW's medical technology investments, including its investment in Masimo.  Mr. Kiani and Dr. Yalamanchi communicate regularly by both telephone and text (including encrypted WhatsApp messages), have dinner together with their spouses, and are both members of the Orange County, California business community.  Indeed, Dr. Yalamanchi is the *only* Masimo shareholder who has flown on the Masmio company jet with Mr. Kiani.[2]

35.     Mr. Kiani is also friendly with Roderick Wong, RTW's Founder, Managing Partner, and Chief Investment Officer.  Among other things, Mr. Kiani has been a guest speaker at a course Dr. Wong teaches at New York University on "Financial Analysis in Healthcare."

---

[2]  The flight manifest for Masimo's corporate jet for 2023 and 2024 shows that no other shareholders have flown on the plane.

**D.    Mr. Kiani and RTW Form an Undisclosed Section 13(d) Group with Plans to Manipulate the Shareholder Vote**

36.    As of March 31, 2024—six days after Politan announced its nominees, RTW owned a 2.8% stake in Masimo as reflected in its 13F filing with the Securities and Exchange Commission ("SEC").  Knowing that there was a serious risk that Politan's nominees would again obtain enough votes to prevail at the Annual Meeting, Mr. Kiani sought more votes to swing the election in his favor.  To do so, RTW and Mr. Kiani agreed to engage in an "empty voting" scheme through which RTW's voting power was artificially inflated far beyond its actual economic exposure to Masimo.

37.    In corporate elections, corporations use a "record date" to determine which shareholders are entitled vote at the annual meeting.  The record date is fixed ten to sixty days in advance of the meeting date.  Shareholders' power to vote at the meeting is determined by their shareholding as of the record date.

38.    For the Annual Meeting, which was initially scheduled for July 25, 2024, Masimo set a Record Date of June 13, 2024.  To effectuate his scheme with RTW, Mr. Kiani needed RTW's increased voting power as of that particular day.  However, as described below, RTW used short sales to ensure that its economic exposure to Masimo remained at or below 2.8%, even as its voting power in the Company increased to 9.9% (causing the group's total ownership to reach 19%).  Thus, its exercise of its voting power was "empty" because it was disconnected from its true economic exposure to the stock.

**E.      RTW and Mr. Kiani Agree on a Plan to Manipulate the Shareholder Vote**

39.      Days after Politan announced its intention to nominate Dr. Solomon and Mr. Jellison, Mr. Kiani reached out to RTW immediately and began providing confidential information to RTW regarding the proxy contest.

40.      On March 31, 2024, Mr. Kiani sent a confidential press release and Form 8-K to RTW that disclosed that Politan was nominating individuals for election to the Board, the day before the information became public.

---

**From:** Joe Kiani <jkiani@masimo.com>
**Sent:** Sunday, March 31, 2024 2:11 PM
**To:** Naveen Yalamanchi <ny@rtwfunds.com>
**Cc:** Tom McClenahan <tmcclenahan@masimo.com>
**Subject:** Confidential PR and 8K for tomorrow before the market opens

Hi Naveen,
As a long term shareholder, I wanted to see what you think of this PR before we put it out.  Please don't trade on anything until this is out, which is going to go out before the market opens tomorrow morning.
All the best,
Joe

41.      By providing material non-public information to an investor, Mr. Kiani violated Regulation Fair Disclosure (known as "Reg FD"), which prohibits the selective disclosure of company information to certain investors before other investors.

42.      Days later, on April 3, 2024, Mr. Kiani reached out to Dr. Yalamanchi and asked to schedule a call with him.  At or about that time, Mr. Kiani and RTW agreed to manipulate the shareholder vote in favor of Mr. Kiani, thereby forming a Section 13(d) group.  This plan included an empty voting scheme through which RTW would reach a 9.9% purported voting power by the June 13 Record Date (causing the group's total ownership to reach 19%).

43.      Trading records strongly suggest that, to carry out the scheme, Mr. Kiani disclosed to RTW the June 13 Record Date before the Company disclosed the Record Date to shareholders on June 10, 2024.

**F.      RTW and Mr. Kiani Remain in Continuous Contact**

44.      Beginning with scheduling a phone call on April 3, 2024, Mr. Kiani remained in continuous contact with RTW's principals—Drs. Wong and Yalamanchi.  By way of example only, Masimo is aware of the following fourteen telephone calls and text messages—not including emails—between Mr. Kiani and Drs. Wong and Yalamanchi from April 1, 2024 through July 4, 2024:

| DATE | COMMUNICATION |
|------|---------------|
| 4/3/24 | Mr. Kiani text message to Dr. Yalamanchi to schedule call |
| 4/24/24 | Multiple WhatsApp messages between Mr. Kiani and Dr. Wong |
| 6/1/24 | Mr. Kiani text message to schedule call with Dr. Yalamanchi |
| 6/5/24 | Mr. Kiani text message to schedule call with Dr. Yalamanchi |
| 6/12/24 | Call from Mr. Kiani to Dr. Yalamanchi (23 seconds) |
| 6/13/24 | Call from Mr. Kiani to Dr. Yalamanchi (11 minutes 28 seconds) |
| 6/17/24 | Call from Mr. Kiani to Dr. Yalamanchi (2 seconds) |
| 6/18/24 | Call from Mr. Kiani to Dr. Yalamanchi (22 minutes 40 seconds) |
| 6/22/24 | Call from Mr. Kiani to Dr. Yalamanchi (3 seconds) |
| 6/22/24 | Call from Mr. Kiani to Dr. Yalamanchi (11 minutes 35 seconds) |
| 6/26/24 | Mr. Kiani text message to schedule call with Dr. Yalamanchi |
| 6/27/24 | Dr. Yalamanchi text to Mr. Kiani |

| DATE | COMMUNICATION |
|------|---------------|
| 6/27/24 | **Mr. Kiani texts Dr. Yalamanchi picture of shareholder voting power** |
| 7/4/24 | Mr. Kiani unanswered call to Dr. Yalamanchi |

**G.    RTW Builds Its Position in Masimo to 9.9% Just in Time for the June 13 Record Date, Causing the Group's Total Ownership to Reach 19%**

45.    After forming the group, RTW began executing the empty voting scheme. On May 24, 2024, Sean Lavin of Alpha Lavin Advisors, one of Masimo's strategic advisory firms in the proxy contest, emailed Mr. Kiani and others to say that "I spoke with [Dr. Yalamanchi] again while on the road.  [RTW is] trying to buy more shares and hope to get to the 8-10% range. They think it is very important that Joe [Kiani] be running Masimo long term."

46.    From May 23, 2024 through June 13, 2024, RTW executed large block trades in Masimo stock of between 350,000 and 650,000 shares.  All told, in the days leading up to the June 13 Record Date, RTW *more than tripled* its Masimo position on paper, ultimately accumulating a *9.9%* ownership interest in Masimo (causing the group's total ownership to reach 19%).

47.    Innisfree M&A Inc. ("Innisfree"), one of Masimo's proxy solicitation and investor relations firms, informed Masimo on June 10, 2024 that RTW executed these block trades. Thus, there is no question that Mr. Kiani was aware that it was RTW that conducted these block trades in the days leading up to the June 13 Record Date.

48.    Further, this trading proves that RTW knew of the June 13 Record Date before it was publicly disclosed.  RTW would not have been able to discern the Record Date on the basis of Masimo's preliminary proxy statement dated May 31, 2024, which left the Record

13

Date blank—and yet, RTW's trading during the period of May 23, 2024 to June 5, 2024 shows that it somehow knew that the Record Date would be on or around June 13, 2024.

49.      RTW's new, temporary position of 9.9% in Masimo caused the group's total ownership to reach 19% of Masimo's outstanding common stock (when combined with Mr. Kiani's 9.1%).  Shareholders were never told that a Section 13(d) group representing nearly 20% of the voting power in the entire Company had been formed and was actively seeking to manipulate the shareholder franchise.

**H.    RTW Eliminates the Economic Exposure of Building its Position From 2.8% to 9.9% by Engaging in Short Selling**

50.      Short selling is a trading strategy through which an investor can benefit from the decrease in the price of a security.  To execute a short sale of a company's stock, an investor (the "short seller") borrows shares from a broker dealer or other market participant and then sells the borrowed shares in the open market.  If the price of the shares decreases over time, the short seller can "cover" the short position by purchasing an equivalent number of shares at a lower price in the markets and returning the shares to the broker dealer from whom the original shares were borrowed.  The short seller profits because it sold the shares for a higher price than it had to pay to cover the short.

51.      During the period from May 23, 2024 to June 13, 2024 in which RTW built its position in Masimo from 2.8% to 9.9%, short interest in Masimo's stock spiked by a total of three million shares, reaching a peak of approximately six million shares, or 12.2% of outstanding shares.  This indicated new, large short positions in Masimo's stock.

52.     The rising short interest was a result of short sales conducted by RTW. Innisfree reported to Masimo that the "surge was a result of RTW Investments' derivative purchase [short selling] rather than rising bearish sentiment."

53.     Through this trading, RTW sold short enough shares to offset any economic risk that came from increasing its long position in Masimo from 2.8% to 9.9%.  Accordingly, RTW purported to acquire a 9.9% voting power interest in Masimo without the attendant economic risk.

54.     On June 18, 2024, Innisfree informed Masimo through non-public reports available only to proxy participants that the shares RTW had borrowed had ultimately come from shares beneficially owned by BlackRock.

**I.    Mr. Kiani's Texts with Dr. Yalamanchi Demonstrate Coordination on the Empty Voting Scheme**

55.     On June 27, 2024, Mr. Kiani texted Dr. Yalamanchi, in advance of a telephone call, a photo of a whiteboard listing the voting totals for numerous large Masimo shareholders.  That photo is particularly telling, as it shows RTW with a shareholding of 10%, even though RTW's most recent Schedule 13F disclosed that RTW had a 2.8% shareholding, and BlackRock with a shareholding of 9%, even though public filings showed that BlackRock had a 16% shareholding.

56.     Further, the photo shows that Mr. Kiani expected he would have a total of 55% of shareholder support, meaning that Mr. Kiani's expected margin of victory was dependent on the empty voting scheme through which RTW increased its position from 2.8% to 9.9% (as the increase of 7.1% enabled Mr. Kiani to cross 50%).

57.     Finally, the photo contains confidential information about vote totals available to proxy participants that is not permitted under applicable securities laws to be provided

to voting shareholders.  In particular, the fact that the borrowed shares that RTW sold short ultimately came from BlackRock's beneficial ownership was confidential information that RTW could not have known had it not been disclosed by Mr. Kiani.

58.    The photo is set forth below with a red box added for emphasis.



59.     Therefore, pursuant to their group agreement, (i) RTW had increased its voting position from about 3% (the amount it publicly reported) to about 10%, (ii) RTW had sold short an equivalent amount of stock to offset the economic exposure of increasing its position in Masimo, and (iii) the shares that RTW sold short had come from BlackRock's beneficial ownership (who would have had no way of knowing that shares it beneficially owned were being lent out to enable an empty voting scheme being committed by RTW and Mr. Kiani).

**J.     RTW Reduces Its Masimo Position Back Down to 2.8% by June 30, 2024 and Publicly Reports 2.8% Ownership on its Quarterly 13F Filing**

60.     Following the June 13 Record Date, RTW swiftly disposed of its newly acquired shares.  According to its Schedule 13F filing, RTW's ownership interest returned to 2.8% by June 30, 2024, a mere *seventeen days* after the June 13 Record Date and *before* RTW had even voted those shares at the Annual Meeting, then scheduled for July 25, 2024.

61.     Innisfree relayed to Masimo on July 1, 2024 that RTW had disposed of 4.3 million shares during the week of June 24, 2024.

62.     Between the June 13 Record Date and June 30, 2024, RTW also covered its short position in Masimo through purchases.

**K.     On July 1, 2024, RTW Empty Votes Its 9.9% Position in Favor of Mr. Kiani in the Proxy Contest**

63.     As confirmed by Depository Trust and Clearing Company ("DTCC") reports of several financial institutions (including Goldman Sachs, J.P. Morgan, and Bank of America), on July 1, 2024, a single block of approximately 9.9% of Masimo shares voted early in favor of Mr. Kiani and his slate on approximately the same day that Mr. Kiani voted his own stake in favor of his slate.  RTW was the primary holder and the custodian of those accounts.

Accordingly, it is plain that RTW voted those shares, which represented 9.9% of the Company's outstanding common stock.

64.     On that date, Innisfree noted in a report to Masimo that "[a] single block of ~5.25 million shares [9.9% of the Company shares] were voted extremely early" and confirmed to Masimo that RTW was the primary holder and the custodian of those accounts. Thus, Mr. Kiani was aware that this large block of shares belonged to RTW and that they were voted early in favor of the Company's nominees.

**L.     RTW Attempts to Lobby Glass Lewis, Representing Itself as a 9.9% Shareholder**

65.     On July 1, 2024, the same day that it empty voted, RTW privately reached out to Glass Lewis, expressing support for the Masimo slate and opposition to Politan's nominees. When doing so, RTW represented that it had a 9.9% ownership interest in Masimo.

66.     Glass Lewis noted the inconsistency between RTW's claimed status as a 9.9% shareholder and its public filings reflecting that it was a 2.8% shareholder. Glass Lewis observed that according to S&P Capital IQ's market intelligence service, "RTW was the owner of a 2.8% interest in Masimo as of March 31, 2024, indicating the ownership position communicated in the July 1, 2024 email represented an increase of approximately *3.6x* by RTW over the course of approximately three months."

67.     Glass Lewis further noted that, while it did not have further information about RTW and was expressly not basing its recommendation on the empty voting issue, "the specified ownership interest and implied rate of accrual appear to align with certain of the concerns" raised about empty voting. As Glass Lewis is not a proxy participant, it did not have access to the non-public DTCC and other reports that made plain that empty voting had occurred. Nevertheless, Glass Lewis warned that "[i]f additional materials corroborating Politan's concerns

subsequently emerge, whether prior to or following the forthcoming meeting, we would view such circumstances as a *highly inappropriate manipulation of the shareholder franchise* and a severe indictment of Masimo's credibility and corporate governance." (Emphasis added). Glass Lewis recommended shareholders vote against Mr. Kiani in favor of the Politan nominees.

68.    Then, on July 15, 2024, just two business days later, ISS, the other leading independent proxy advisory firm, joined Glass Lewis in recommending that Masimo's shareholders vote for both of Politan's nominees at the Annual Meeting. In an unflinching indictment, ISS opined that: "Mr. Kiani has demonstrated that he has no regard for public shareholders. He has been at the center of so many corporate governance scandals and abuses that no credible argument exists to the contrary."

69.    With both Glass Lewis and ISS recommending that shareholders vote against Masimo's nominees in the rapidly approaching election, Mr. Kiani was desperate to buy more time and put off the Annual Meeting to give himself a chance to change the outcome of the shareholder election.

**M.    The Board Moves the Annual Meeting to September 19, 2024**

70.    In a transparent reaction to Politan's nominees receiving the recommendation of both leading proxy advisory firms, Mr. Kiani called a Board meeting for July 15, 2024, the same day that ISS issued its report. At that meeting, the Kiani-controlled Board voted to: (i) re-set the Record Date for August 12, 2024 and (ii) delay the Annual Meeting until September 19, 2024.

71.    By moving the Record Date a month out, Mr. Kiani provided himself and RTW additional time to again attempt to manipulate shareholders' voting to elect Masimo's directors.

**N.    RTW and Mr. Kiani Continue Their Empty Voting Scheme with the New Record Date**

72.    As with the prior June 13 Record Date, data from shortly after the August 12 Record Date demonstrates that RTW again engaged in an empty voting scheme.  Specifically, as with the earlier instance of empty voting, both short interest and trading volume in Masimo's stock spiked in the days leading up to the August 12 Record Date.  Indeed, short interest spiked to an even greater extent than the prior time—and, just like the prior time, it returned to normal levels soon after the August 12 Record Date.  This spike occurred because RTW again sold short a large number of Masimo shares as it again secretly built its gross long position from 2.8% back up to 9.9% in time for the August 12 Record Date.



73.    Then, on August 21, 2024, DTCC reports showed that approximately 9.9% of Masimo shares were voted early in favor of Mr. Kiani's slate and again were voted on approximately the same day that Mr. Kiani voted his stake in favor of his slate.  Unusually, those votes were revoked by the voting shareholder on August 26, 2024, which is extraordinarily unusual—typically a vote is changed merely by submitting a new vote which has the operative effect of cancelling the prior vote.

74.    On information and belief, 864,805 of the shares voted on August 21 were custodied with Bank of America Securities and represent a confirmed RTW position.  Indeed, the

custody accounts where all the voted shares reside are known custodians of RTW, according to RTW's Form ADV filed with the SEC.  Further, all the votes that were revoked on August 26 were attributed to a single shareholder.  Accordingly, RTW likely is the shareholder that voted and revoked the vote of over four million shares.

75.     On September 17, 2024, RTW voted approximately 4.6 million shares in favor of the Company's nominees, including Mr. Kiani.  On information and belief, RTW previously voted approximately 600,000 shares on or around August 21, but did not revoke those votes on August 26.  All told, therefore, RTW voted approximately 5.2 million shares (or 9.9% of the Company's outstanding common stock) for the Masimo slate, including Mr. Kiani.

76.     Given his regular communication with RTW and active involvement in RTW's prior empty voting scheme, it appears that Mr. Kiani again facilitated RTW's inequitable manipulation of the shareholder vote.

## O.     Mr. Kiani and RTW Fail to Make the Required Disclosures under Sections 13 and 16 Disclosing Their Group Holding 19% of Masimo Stock

77.     Section 13(d) of the Exchange Act ("Section 13(d)") was enacted for the express purpose of ensuring that investors have basic information about the activity of large shareholders that may affect their investment.  In particular, Section 13(d) and its implementing regulations require that non-passive investors must file a Schedule 13D with the SEC within five business days after acquiring beneficial ownership of more than 5% of any class of the corporation's voting securities.  15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d-1(a).

78.     Importantly, Section 13(d) applies to *groups* of shareholders.  Section 13(d)(3) deems a group of investors to be a single owner "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer."

*See* 17 C.F.R. § 240.13d-5(b)(1).  Each member of a group is required to file a Schedule 13D disclosure when *the group's total holdings* surpass 5% of the beneficial ownership.  15 U.S.C. § 78m(d)(3); 17 C.F.R. § 240.13d-3.

79.     Here, Mr. Kiani and RTW agreed to act together for the purpose of manipulating the shareholder vote through the empty voting scheme, which involved acquiring, holding, voting, *and* disposing of Masimo securities, only one of the four categories is sufficient to create a Section 13(d) group.  Accordingly, Mr. Kiani's 9.1% beneficial ownership in Masimo during the relevant time must be combined with RTW's beneficial ownership and is attributed to all members of the group.  Thus, the group's beneficial ownership ranged from 11.9% when the group was initially formed and reached as high as 19% on the two Record Dates.

80.     Despite being well over the 5% threshold and taking an active position in the Company, the group never made any Schedule 13D filings disclosing their group status or their plans and arrangements with respect to the empty voting scheme, which Schedule 13D required.  Further, Section 13(d)(2) of the Exchange Act and its implementing regulations require that the investor (or group, as the case may be), promptly file an amended Schedule 13D in the event of "any material change" in the facts set forth in the form.  *See* 15 U.S.C. § 78m(d)(2), 17 C.F.R. § 240.13d-2.  Thus, not only did the group fail to file an initial Schedule 13D, but it also failed to file the amended Schedule 13Ds that would have shown RTW's position building and then decreasing as it implemented the empty voting scheme.

81.     Furthermore, even putting aside RTW's formation of a group with Mr. Kiani, RTW on its own crossed the 5% threshold while actively investing in Masimo stock.  Indeed, as noted, RTW expressly identified itself as a 9.9% shareholder to Glass Lewis on July 1, 2024.  But RTW has never filed a Schedule 13D disclosing its ownership.

**P.    The Group Is Subject to Section 16 of the Exchange Act**

82.    As a member of a group holding 10% or more of Masimo's common stock starting in or around April 2024, RTW became a statutory insider under Section 16 of the Exchange Act and thus became subject to the disclosure requirements, disgorgement requirements, and short selling prohibitions of Section 16.  15 U.S.C. § 78p(a)(1).  Mr. Kiani already was a statutory insider by virtue of his status as an officer and director of Masimo.

83.    As a statutory insider subject to Section 16(a), RTW was required to file Forms 3 and 4 disclosing its status as an insider, its beneficial ownership, and any changes thereto.  But RTW never did so.  Further, Mr. Kiani failed to amend his Form 4 to reflect his group status with RTW.

84.    Section 16(b) provides that if a statutory insider purchases and sells, or sells and purchases shares of any equity security of such issuer within a period of less than six months, any profits arising from those transactions are recoverable by the issuer.  As statutory insiders, RTW and Mr. Kiani are required to disgorge profits from short-swing trading to Masimo.  Although the group engaged in short-swing trading, no such profits have been disgorged.

85.    Between May 24, 2024 and September 18, 2024, Mr. Kiani and RTW engaged in matchable purchases and sales within a six-month period.

86.    With respect to matchable **purchases**, RTW, among other things:

- purchased shares between May 23, 2024 and June 13, 2024 as it built its position in Masimo from 2.8% to 9.9%, during which time Masimo's stock price ranged from $124.17 to $133.85 per share;

- covered its short position by purchasing shares between June 14, 2024 and June 30, 2024, during which time Masimo's stock price ranged from $125.94 to $135.80 per share;

- purchased shares between July 1, 2024 and August 12, 2024 to re-build its position in Masimo from 2.8% to 9.9%, during which time Masimo's stock price ranged $104.79 to $127.94 per share; and

- covered its short position by purchasing shares between August 12, 2024 and September 19, 2024, during which time Masimo's stock price ranged $111.36 to $128.39 per share.

87.     With respect to matchable **<u>sales</u>**, RTW, among other things:

- engaged in short sales between May 23, 2024 and June 13, 2024, during which time Masimo's stock price ranged from $124.17 to $133.85 per share;

- sold shares between June 14, 2024 and June 30, 2024, reducing its position in Masimo from 9.9% to 2.8%, during which time Masimo's stock price ranged from $125.94 to $135.80;

- engaged in short sales between July 1, 2024 and August 12, 2024, during which time Masimo's stock price ranged $104.79 to $127.94 per share; and

- sold shares between August 12, 2024 and September 19, 2024 as it reduced its position from 9.9% to 2.8%, during which time Masimo's stock price ranged $111.36 to $128.39 per share.

88.     As Mr. Kiani and RTW failed to comply with their disclosure obligations under Sections 13 and 16, it is not possible to ascertain the precise amount of short-swing profits

that are subject to disgorgement, but given the amount of trading that took place during the six-month window and the volatility of Masimo's stock, it is a virtual certainty that some of the sales took place at a price higher than some of the purchases, which would lead to disgorgeable profits.

89.    Finally, as statutory insiders to Section 16(c), RTW and Mr. Kiani were prohibited from short selling.  Accordingly, the short selling RTW engaged in to effectuate the empty vote scheme violated Section 16(c).

## **FIRST CAUSE OF ACTION'**

**Declaratory Judgment that Defendants Formed a Group under Section 13(d), 15 U.S.C. 78m(d) – Failure to File (Against All Defendants)**

90.    Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth herein.

91.    Pursuant to 28 USC § 2201, the Court has the authority to declare the rights and other legal relations of any interested party seeking such declaration.

92.    An actual controversy has arisen and now exists between Masimo and Defendants, which controversy may be determined by a declaratory judgment of the Court.

93.    As detailed above, RTW and Kiani acted together to acquire more than 5% of Masimo's common stock and reached an agreement, arrangement or understanding to engage in the empty voting scheme.

94.    Section 13(d)(3) deems a group of investors to be a single owner "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer."  *See* 17 C.F.R. § 240.13d-5(b)(1).

95.     As detailed above, RTW and Kiani acted together to acquire more than 5% of Masimo's common stock, requiring them to report as a group on Schedule 13D pursuant to Section 13(d) of the Exchange Act and its implementing regulations.

96.     Defendants formed a Section 13(d) group when they agreed that RTW would accumulate Masimo stock for the purpose of empty voting the stock in favor of the Kiani-selected Masimo slate at the Annual Meeting.   Upon formation of the group, Defendants' combined ownership in Masimo exceeded 5% of the outstanding common stock of Masimo.

97.     A judicial determination is necessary and appropriate at this time and under these circumstances for the parties to ascertain their rights and obligations to one another.

98.     Plaintiff is entitled to a declaration that Defendants formed a "group" within the meaning of the federal securities laws, specifically Section 13(d).

## SECOND CAUSE OF ACTION

**Violation of Exchange Act Section 16(b), 15 U.S.C. 78p(b) – Failure to Disgorge
Short-Swing Profits
(Against All Defendants)**

99.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

100.     Masimo has standing to seek relief for violations of Section 16(b) of the Exchange Act, 15 U.S.C. §§78p(b).

101.     Defendants formed a group when they agreed that RTW would accumulate Masimo stock for the purpose of empty voting those shares in favor of the Masimo slate at the Annual Meeting.   Defendants' combined ownership in Masimo exceeded 10% of outstanding Masimo stock.

102.    Defendants beneficially owned 10% or more of Masimo's outstanding stock at the times relevant to this action by being member of a group within the meaning of Section 16(b).

103.    While statutory insiders subject to Section 16(b), Defendants engaged in matchable purchases and sales within a six-month period, generating short-swing profits that must be disgorged back to Masimo.

104.    Defendants failed to disgorge short-swing profits to Masimo.

105.    Defendants Wong, Yalamanchi, RTW Investments GP, LLC, and RTW Fund Group GP, LLC have a pecuniary interest in short-swing profits realized by RTW and are liable to the extent of their respective pecuniary interests in the transactions to disgorge to Masimo their short-swing profits.

106.    Plaintiff is unable to precisely ascertain Defendants Wong's, Yalamanchi's, RTW Investments GP, LLC's, and RTW Fund Group GP, LLC's pecuniary interests in the transactions.

107.    Plaintiff is entitled to an Order directing Defendants to disgorge short-swing profits.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants and in favor of Plaintiff, and issue an Order:

a.    Declaring that Defendants formed a group within the meaning of Section 13(d) of the Exchange Act;

b.    Requiring Defendants to disgorge all short-swing profits made as a result of their group's empty voting scheme in violation of Section 16(b) of the Exchange Act;

c.      Awarding Plaintiff its attorneys' fees and costs as provided by law; and

d.      Awarding all such further relief as the Court deems just and proper.

Dated:  New York, New York
        October 25, 2024

                                        SCHULTE ROTH & ZABEL LLP

                                By:     _____
                                        Michael E. Swartz
                                        Randall T. Adams
                                        Alexandra J. Carlton

                                        919 Third Avenue
                                        New York, NY  10022
                                        Telephone: 212.756.2000

                                        *Attorneys for Plaintiff Masimo Corporation*